IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BREONA TATUM,<br><br>Plaintiff,<br>v.<br><br>HEIDI MUELLER, LETICIA ZAVALA, and MATT JORDAN,<br><br>Defendants. | No. 1:26-cv-00624<br>Judge Franklin U. Valderrama |

## ORDER

Plaintiff Breona Tatum (Tatum) holds a Child Welfare Employee License (CWEL) issued by the Illinois Department of Children and Family Services (DCFS). Tatum simultaneously worked at Children's Place Association, a private child welfare agency, and at DCFS. Tatum informed DCFS about her employment at Children's Place Association. Due to her secondary employment, DCFS suspended her and eventually terminated her, which, pursuant to a settlement agreement, was amended to be a voluntary resignation. Subsequently, Tatum received notice of DCFS's intent to revoke her CWEL, and, at the time Tatum filed this lawsuit, administrative licensure proceedings were ongoing. Tatum, proceeding *pro se*, sued Defendants Heidi Mueller (Mueller) in her official capacity and Leticia Zavala (Zavala) and Matt Jordan (Jordan) (together Defendants) in their individual and official capacities, alleging that Defendants violated her constitutional rights pursuant to 42 U.S.C. § 1983, as

well as bringing related state law claims. R. 1, Compl.[1] Before the Court is Tatum's motion for a preliminary injunction, in which she requests that the Court pause further licensure action affecting her CWEL license pending judicial review of the referral process. R. 6, Pl. Mot. Prelim. Inj.; R. 21, Pl. Renewed Mot. Prelim. Inj. Also before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 32, Mot. Dismiss. For the reasons stated below, the Court grants Defendants' motion to dismiss and denies Tatum's motion for a preliminary injunction.

## Background

### I. Factual Allegations

On May 1, 2023, Tatum was hired as a DCFS Child Protection Specialist. Compl. ¶ 25. On May 8, 2023, Tatum informed DCFS of her secondary employment with Children's Place Association. *Id.* ¶¶ 28–30. DCFS's ethic's office informed Tatum in writing that her employment with Children's Place Association presented a conflict of interest with her employment at DCFS. *Id.* ¶ 33. DCFS did not instruct Tatum to immediately resign from either position and did not provide a deadline for compliance. *Id.* ¶¶ 34–35. Tatum continued working in both roles without further instruction from DCFS. *Id.* ¶ 37.

The DCFS Office of the Inspector General (OIG) later initiated an investigation concerning Tatum's employment. Compl. ¶ 39. Defendant Jordan served as the investigator. *Id.* ¶ 40. Zavala is an attorney with OIG. ¶ 14. Jordan, in an OIG

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

investigative report to Mueller, the DCFS Director, recommended DCFS terminate Tatum's employment. *Id.* ¶¶ 12, 42–43. The report did not recommend CWEL suspension or revocation. *Id.* ¶ 44.

In July 2024, Tatum was placed on suspension at DCFS, and she was terminated from her position with DCFS in August 2024 because she had secondary employment. Compl. ¶¶ 45–47. Tatum appealed her termination to the Illinois Civil Service Commission, but later withdrew her appeal after she and DCFS reached a settlement. *Id.* ¶¶ 48–49, 52. Pursuant to the terms of the settlement agreement, Tatum's termination was amended to be a voluntary resignation and Tatum agreed not to seek reinstatement with DCFS or to work as a contractor for DCFS. *Id.* ¶¶ 50–51. The settlement agreement did not address Tatum's CWEL. *Id.* ¶ 53.

On May 1, 2024, Defendants convened an internal Emergency Licensure Review Team meeting concerning Tatum's Child Welfare Employee License. Compl. ¶ 56. Tatum was not provided notice of the Emergency Licensure Review Team meeting, was not invited to participate, and was not informed that her CWEL licensure was under review at that time. *Id.* ¶ 57. On May 15, 2025, Tatum received notice of DCFS's intent to revoke her CWEL. *Id.* ¶ 58. Tatum filed an answer to the notice and a motion to dismiss. *Id.* ¶¶ 62–63. On August 12, 2025, an Administrative Law Judge heard argument on the motion to dismiss and denied the motion. *Id.* ¶¶ 65–66. An evidentiary hearing on the review of Tatum's CWEL was scheduled for January 29, 2026. *Id.* ¶ 69. At the time Tatum filed this lawsuit, her CWEL license remained active. *Id.* ¶ 70.

Tatum's continued employment in the child welfare field depends on maintaining an active CWEL. Compl. ¶ 71. Therefore, according to Tatum, the CWEL proceedings place her livelihood at risk. *Id.* ¶ 72.

## II. Statutory and Regulatory Background

The Children and Family Services Act requires that DCFS "develop and implement a direct child welfare service employee license." 20 ILCS 505/5c (the Act). The CWEL is required for employees and contractors to perform work for DCFS; it may not be used for anything other than doing the work of the State. *See* 20 ILCS 505/5c(a) ("[A]ll child protective investigators and supervisors and child welfare specialists and supervisors employed by the Department or its contractors shall be required to demonstrate sufficient knowledge and skills to obtain and maintain the license.").

The Act further provides that the "the Department shall promulgate such rules as necessary to implement this Section." 20 ILCS 505/5c(a). Department Rule 412 provides the administrative framework for implementation.

To practice as a direct child welfare service employee who "carr[ies] assigned cases and/or provide case management services for . . . investigation, casework, intact/family preservation, permanency, or licensing," the employee must have a CWEL. 89 Ill. Admin. Code § 412.40(a). Rule 412(a) provides that "individuals responsible for making licensing decisions for domestic and foreign adoption agencies and who do not make placement decisions are not required to be licensed . . . ." Licensure requires a background check, a bachelor's degree, training by the DCFS

and an examination on the training completed with a passing score, and a valid driver's license. 89 Ill. Admin. Code § 412.40(b). Additionally, when seeking licensure, an employee must not be delinquent in paying child support, must not be in default with educational loans, cannot pose a danger to state resources or clients, and has not previously relinquished a CWEL nor had the license revoked. *Id.*

Department Rule 412 sets forth the restrictions and limitations of the CWEL license. Rule 412.40(f)(1) provides, "All direct child welfare service employees and supervisors must obtain a license under this Part to be employed as a direct child welfare service employee." In addition:

> This license does not allow any person to represent herself or himself as a licensed social worker or licensed clinical social worker as defined under the Clinical Social Work and Social Work Practice Act [225 ILCS 20]. The license is solely for the purpose of employment with the Department or with a POS agency or a temporary services agency as a direct child welfare service employee.

89 Ill. Admin. Code §412(f)(4).

The Direct Child Welfare Service Employee License Board (the Board) is composed of five licensed human service professionals, including two professionals from the non-profit sector and one from the public sector; two university faculty members with child welfare experience, and two members of the general public who represent consumer interest. 20 ILCS 505/5d. The Board has the authority to revoke or suspend a Child Welfare Service Employee License after a hearing. 89 Ill. Admin. Code § 412.60. The Board also has the power to reinstate a license. 89 Ill. Admin. Code § 412.100. The Board may suspend, revoke, or refuse to reinstate a license. 89 Ill. Admin. Code § 412.50(a).

The OIG investigates complaints made to the Board regarding licensure. 89 Ill. Admin. Code § 412.60(b). If the investigation warrants further action, the OIG provides Notice of Administrative Hearing, notifying the licensee of the Department's intent to revoke or suspend the Child Welfare Employee License. 89 Ill. Admin. Code § 412.60(c). An Administrative Law Judge (ALJ) conducts the hearing in accordance with Rule 412.60. 89 Ill. Admin. Code § 412.60. The ALJ "prepare[s] a recommendation, along with findings of fact and conclusions of law" 89 Ill. Admin. Code § 412.60(p)(2).

The ALJ presents the recommendation to the Board for review. 89 Ill. Admin. Code § 412.60. The Board must then "accept the ALJ's findings of fact as true unless it finds that the findings of fact are contrary to the manifest weight of the evidence." 89 Ill. Admin. Code § 412.60 (p)(2). The Board may accept the ALJ's recommendation, make its own findings of fact or conclusions of law, or remand the case for further review. *Id.* The Board then issues a Final Administrative Decision to the licensee, which advises whether the child welfare employee remains in good standing or whether their Child Welfare Employee License has been revoked or suspended. 89 Ill. Admin. Code § 412.70. Upon suspension or revocation, the licensee must immediately surrender the license to DCFS. If that decision by the Board is unfavorable to the licensee, they may "seek judicial review of the final administrative decision if it is unfavorable to them, within the statutory time frame." *Id.* Final administrative decisions are subject to judicial review under the Illinois Administrative Review Law. 735 ILCS 5/3-101 *et seq.*

## III. Procedural Background

Tatum filed her Complaint on January 20, 2026, asserting federal claims for violation of procedural due process under § 1983 (Count II) and violation of equal protection under § 1983 (Count III), as well as state law claims for breach of the settlement agreement (Count I), abuse of process (Count IV), and promissory estoppel (Count V). Compl. ¶¶ 74–114. Tatum seeks declaratory and injunctive relief against Mueller in her official capacity only, and seeks compensatory damages against Jordan and Zavala in their individual capacities for actions taken under color of state law. *Id.* ¶ 18.

The same day she filed her Complaint, Tatum also filed a motion for a temporary restraining order and preliminary injunction. R. 6. The Court found that Tatum had not satisfied Federal Rule of Civil Procedure 65(b)'s requirements warranting emergency *ex parte* relief, and therefore considered the motion be a motion for a preliminary injunction. R. 22. Once Defendants appeared in the case, the Court set a briefing schedule on the motion for a preliminary injunction, providing for a response and a reply. R. 34. Defendants filed a response by the deadline, R. 42, Defs.' Resp. Prelim. Inj., but to date, Tatum has not filed a reply.

Defendants also filed a motion to dismiss, arguing that: the Complaint does not satisfy Rule 8(a)'s pleading standard; Tatum may not bring an action under § 1983 against Defendants in their official capacity; Tatum's claims against Defendants are barred by the Eleventh Amendment; Defendants are entitled to qualified immunity; and Tatum's state law claims are barred by state sovereign

immunity. Mot. Dismiss; R. 33, Memo. Dismiss. The Court set a briefing schedule on the motion to dismiss, R. 34, but to date, Tatum has not filed a response.

## Legal Standards

### I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

"Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response," *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021), and the burden remains on Defendants "to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). Put another way, the Court's obligation to determine the sufficiency of Tatum's Complaint remains, despite

her failure to respond. *Id.* That said, "[i]f a court is 'given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.'" *Wilcox v. Clark*, 2022 WL 3099002, at *3 (N.D. Ind. Aug. 4, 2022) (quoting *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) and citing, *inter alia*, *Garza v. Cervantes*, 2015 WL 468748, at *1 (N.D. Ill. Feb. 3, 2015)).

## II. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion, on the other hand, tests whether the court has subject matter jurisdiction. *Hallinan* 570 F.3d at 820. In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself

as to the existence of its power to hear the case." *Apex Digit.*, 572 F.3 at 444 (citation modified).

## III. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Tully v. Okeson*, 78 F. 4th 377, 378 (2023) (citation modified). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the relief is not granted. *Richwine v. Matuszak*, 148 F.4th 942, 952 (7th Cir. 2025). "Of all these factors, the likelihood of success on the merits ordinarily carries the most weight." *Minocqua Brewing Co., LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025) (citation modified). To establish a likelihood of success on the merits, the movant need not show that it will unquestionably win the case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, a mere "possibility of success is not enough" and "neither is a better than negligible chance." *Id.* at 762 (cleaned up). A strong showing of likelihood of success on the merits normally includes the movant showing how he or she proposes to prove the key elements of its case. *Id.* at 763.

"If the plaintiff establishes these threshold requirements, then the court must balance the equities, weighing the harm to the moving party if the requested

injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citing *Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). Finally, in balancing the harms, the Court must consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

**Analysis**

**I. Motion to Dismiss**

The Court begins with Defendants' motion to dismiss and then turns, as necessary, to Tatum's motion for a preliminary injunction.

As an initial matter, Defendants argue generally that Tatum's claims must be dismissed because "[t]he Complaint is devoid of any facts pertaining to Defendants that demonstrate they violated [Tatum's] rights." Memo. Dismiss at 7. Defendants, however, fail to identify the ways in which Tatum's allegations are deficient, and the Court declines to dismiss Tatum's claims based on such a conclusory argument. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver."). The Court addresses in more detail below,

however, Zavala and Jordan's better-developed argument that Tatum fails to allege Section 1983 claims against them in their individual capacities.

The Court turns to Defendants' better developed arguments, starting with their arguments for dismissal of Tatum's federal claims against Defendants in their official capacities.

### A. Section 1983 Official Capacity Claims

Tatum brings claims under Section 1983 against Mueller, Jordan, and Zavala in their official capacities. *See* Compl. ¶¶ 12, 15, 17. But, as stated above, she also alleges that she "seeks declaratory and injunctive relief against Defendant Mueller in her official capacity only [and] seeks compensatory damages against Defendants Zavala and Jordan in their individual capacities for actions taken under color of state law." *Id.* ¶ 18. The Court interprets the Complaint to allege claims against each Defendant in his or her official capacity, and indeed, Defendants move to dismiss official capacity claims against each Defendant. Defendants seek dismissal on three bases: (1) Defendants sued in their official capacities are not "persons" under Section 1983; (2) the Eleventh Amendment bars Tatum's official capacity claims; and (3) the *Younger* abstention doctrine bars the Court's review of CWEL licensure. Memo. Dismiss at 7–9.

The Court starts with Defendants' argument regarding the propriety of Section 1983 official capacity claims brought against state officials. *See Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (noting that because § 1983 does not authorize suits against states, the district court should have dismissed the official-capacity claims

against the public university officials before addressing the Eleventh Amendment defense). Defendants are correct that the "state (including state officers sued in an official capacity) is not a 'person'" for the purpose of § 1983. *Mercado v. Dart*, 604 F.3d 360, 361–62 (7th Cir. 2010) (citing *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65 (1989)). Accordingly, any claim for monetary damages being pursued under § 1983 against Defendants in their official capacities is not a cognizable claim and must be dismissed. *Id.* The Court therefore need not, and indeed should not, address Eleventh Amendment immunity. *See id.* ("That statutory rule makes it unnecessary and inappropriate to consider what limits the eleventh amendment would create.").

Section 1983, however, permits official-capacity suits against state officials that seek only injunctive relief. *Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) and citing *Ex parte Young,* 209 U.S. 123, 159–160 (1908)). The exception created by the Supreme Court in *Ex parte Young* is an exception to the foregoing doctrine and to Eleventh Amendment immunity, and allows "private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123); *see also Power*, 226 F.3d at 819 (a plaintiff "can obtain injunctive relief against the university, since official-capacity suits against state officials that seek only injunctive relief are

permitted by 42 U.S.C. § 1983, and not forbidden by the Eleventh Amendment.") (citations omitted); *Seely v. Avery*, 2011 WL 53169, at *4 (N.D. Ind. Jan. 7, 2011) ("While the [*Ex Parte Young*] exception was developed in connection with Eleventh Amendment immunity, and the court's focus here is on the antecedent issue—that is, the statutory inquiry under § 1983—the exception applies equally to suits brought under § 1983.").

The *Ex parte Young* exception applies only to *prospective* injunctive or declaratory relief to remedy an ongoing or future violation of the plaintiff's constitutional rights in order to give "life to the Supremacy Clause." *Green v. Mansour,* 474 U.S. 64, 68 (1985); *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 268 (2011) ("*Ex parte Young* does not extend to suits where the plaintiff seeks retroactive relief . . . [or] where the federal law violation is no longer [ongoing]") (citations omitted). Therefore, to the extent that Tatum seeks injunctive or declaratory relief regarding alleged *past* violations of her rights, such a claim is barred; however, her Complaint clearly seeks injunctive relief for ongoing or future alleged constitutional violations. *See* Compl. at 11 (requesting, *inter alia*, "[i]njunctive relief enjoining Defendants from continuing, enforcing, or supporting CWEL suspension or revocation proceedings based on resolved conduct" and "[p]rospective injunctive relief barring Defendants from initiating future licensing or disciplinary action based on the same resolved conduct."). Claims seeking such prospective injunctive relief are allowed against state officials under § 1983 and are not barred

by the Eleventh Amendment. The Court therefore turns to Defendants' third basis for dismissal: *Younger* abstention.

Under the *Younger* abstention doctrine, federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). Federal courts must abstain from interference in ongoing state proceedings when they are "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002); *see also Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017). The Supreme Court has stressed that the "[c]ircumstances fitting within the Younger doctrine . . . are 'exceptional'" and include "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 73 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

Here, Defendants contend that the Court should abstain from reviewing Tatum's ongoing CWEL proceedings because "CWEL licensure is uniquely a function of employment as a child welfare worker with DCFS or a contracted agency and this federal action would interfere with the state courts' ability to enforce their judicial functions." Memo. Dismiss at 9 (citing 89 Ill. Admin. Code §412(f)(4)). The Court

agrees that Tatum's claims relating to her CWEL license and the underlying proceedings implicate a state interest in such licensure. And, as discussed above, *see supra* Background.II, the CWEL proceedings are judicial in nature. *See, e.g.*, *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (administrative proceedings to revoke the plaintiff's nursing license were judicial in nature for purposes of *Younger* abstention). Moreover, the CWEL proceedings provide for review in the circuit court, thereby providing Tatum with an opportunity to present her constitutional claims. *See* 735 ILCS 5/Art. III; *see Majors*, 149 F.3d at 713 ("Subsequent judicial review is a sufficient opportunity . . . to raise constitutional challenges.") (citing *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986)). Finally, the CWEL administrative proceedings were initiated well before this lawsuit, and there have been no "proceedings of substance on the merits" in this Court—in fact, discovery has been stayed pending resolution of Defendants' motion to dismiss. *Ewell*, 853 F.3d at 916; R. 41. By failing to respond, Tatum has raised no "extraordinary circumstances" that would prevent the Court from abstaining under *Younger*.

When abstention is appropriate, as here, the Court must determine "'how to abstain from these claims; by dismissing or merely staying them.'" *FreeEats.com*, 502 F.3d at 600 (quoting *Majors,* 149 F.3d at 714). "The pivotal question in making this determination is whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action." *Id.* Here, the Board or the circuit court, on review, can provide the same relief regarding Tatum's CWEL license that she seeks via a declaratory judgment or an injunction from this Court, so dismissal of those claims

under *Younger* is appropriate. *See id.* That said, it is not clear—and Defendants do not argue—that Tatum can obtain damages in the administrative proceedings. The Court addresses her claims for damages below. *See Green,* 281 F.3d at 667 ("A stay is appropriate when a plaintiff is foreclosed from bringing his damages claims in the state proceeding.").

**B. Section 1983 Individual Claims**

Tatum also brings Section 1983 claims against Zavala and Jordan in their individual capacities. Defendants seek dismissal of these claims based on: *Younger* abstention; qualified immunity; and failure to state a claim. The Court addresses each argument in turn.

The Due Process Clause of the Fourteenth Amendment forbids a state to deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To allege a procedural due process claim, a plaintiff must allege that the defendant deprived the plaintiff of a protected liberty or property interest without due process. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000). "The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights—such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). It is well-settled that plaintiffs may only bring § 1983 claims against individuals who were personally involved in the constitutional deprivations

they purport to have suffered. *See Vinning–El v. Evans,* 657 F.3d 591, 592 (7th Cir. 2011); *Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 614 (7th Cir. 2002).

The Court finds, viewing the evidence in the light most favorable to Tatum, that she fails to plausibly allege a procedural due process claim. Although Tatum alleges generally that "Defendants" failed to provide notice or an opportunity for her to be heard "because Defendants conducted an internal Emergency Licensure Review Team review concerning [Tatum's] CWEL licensure on May 1, 2024, without providing notice to [Tatum], and did not inform [Tatum] of any CWEL licensure concern or potential revocation until May 15, 2025," Compl. ¶ 86, the Court agrees with Zavala and Jordan that it is not clear from the Complaint's allegations how their role as OIG investigators or attorneys deprived Tatum of due process, such that she adequately states a claim against them.

Tatum's equal protection claim fares no better. The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination on account of the individuals' race, national origin, or sex. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir.2013). "The Clause also prohibits the singling out of a person for different treatment for no rational reason." *Id.* "To state a class-of-one equal protection claim, an individual must allege that [she] was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 947 (N.D. Ill. 2014) (the Equal Protection Clause "bars state action that irrationally singles out and targets

an individual for discriminatory treatment as a so-called 'class of one,' although such claims are difficult to prove."). The Complaint does not allege how either Zavala or Jordan was involved in the "selective" subjection of Tatum to CWEL revocation proceedings. Compl. ¶ 91.

While the Court could end its analysis at this juncture, for the sake of completeness, the Court addresses Defendants' qualified immunity argument.

"The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Indiana Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A qualified immunity claim presents two questions: "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* at 925–26. A court may address these questions in either order. *Pearson*, 555 U.S. at 236.

"[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds . . . [b]ecause an immunity defense usually depends on the facts of the case." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). However, "a plaintiff can plead himself out of court on qualified immunity grounds," and "[e]xamining whether defendants are entitled to qualified immunity upon a motion to dismiss also comports with the Supreme Court's directive to resolve immunity questions at the earliest possible stage in litigation." *Sabo v. Erickson*, 128 F.4th 836,

842 (7th Cir. 2025) (citations omitted). "So, dismissal of a plaintiff's complaint on qualified immunity grounds is appropriate if, taking the facts alleged in the light most favorable to the plaintiff, the defendant is entitled to qualified immunity as a matter of law." *Id.* at 843. That is, dismissal "is appropriate where the plaintiffs' well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (citation omitted). As the Seventh Circuit explained, "a complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred." *Id.* (citation omitted).

Defendants Zavala and Jordan argue that they are entitled to qualified immunity because the Complaint "is devoid of any allegations that [they] deprived her of a clearly established federal right. Instead, [Tatum] merely states that Defendant Zavala is an attorney with the OIG [and] Defendant Jordan is an investigator with the OIG." Memo. Dismiss at 11. At this stage, Tatum, to overcome the assertion of qualified immunity, must allege a violation of a statutory or constitutional right that was clearly established at the time of the violation, such that a reasonable public official would have known his conduct was unlawful. *Hanson*, 967 F.3d at 592 (citation omitted). Tatum fails to do so.

In sum, the Court finds that Tatum has failed to plead procedural due process or equal protection claims against Zavala and Jordan, and, even if she had adequately pled claims against them, they are entitled to qualified immunity. The Court

therefore need not determine whether Tatum's individual Section 1983 claims for damages are barred under the *Younger* abstention doctrine. *See Campbell v. City of Galesburg*, 2024 WL 1345335, at *4 n.7 (C.D. Ill. Mar. 29, 2024), *aff'd sub nom. Campbell v. City of Galesburg, Illinois*, 2026 WL 381170 (7th Cir. Feb. 11, 2026).

## II. State Law Claims

Defendants posit that the Court should decline to exercise supplemental jurisdiction over Tatum's state law claims. Memo. Dismiss at 11–12.

"When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims." *RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction . . . ."). In fact, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt.*, 672 F.3d at 479 (cleaned up); *see also Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* (cleaned up).

When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (cleaned up). There are, however, special considerations that counsel against relinquishing supplemental jurisdiction: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (cleaned up).

Here, all relevant factors weigh in favor of the Court following the "usual practice" in the Seventh Circuit and relinquishing supplemental jurisdiction. *Groce*, 193 F.3d at 501. First, the statute of limitations will not have run on Tatum's state law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action. *See* 28 U.S.C. § 1367(d); 735 ILCS 5/13-217; *Gendek v. Jehangir*, 518 N.E.2d 1051, 1053 (Ill. 1988) ("The purpose of section 13–217 . . . is to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits"). Second, the Court has not expended significant resources on the pending state law claims. Last, it is not "absolutely clear how the pendant claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (cleaned up). All in all, comity favors allowing the state court to decide the issues of state law. *See RWJ Mgmt.*, 672 F.3d

at 479.

For these reasons, the Court exercises its broad discretion to relinquish supplemental jurisdiction over Tatum's remaining state law claims.

### III. Preliminary Injunction

Having granted Defendants' motion to dismiss for the reasons discussed above, the Court finds that Tatum has no likelihood of success on the merits. Therefore, her motion for a preliminary injunction fails at the first step, and is denied. *See Stanley v. Brown Cnty. Election Bd.*, 829 F. Supp. 3d 506, 518 (S.D. Ind. 2026) (denying preliminary injunction motion based on a lack of likelihood of success on the merits where court granted motion to dismiss all claims).

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss [32] and denies Tatum's motion for a preliminary injunction [6], [21]. Tatum's claims are dismissed without prejudice. Tatum may file an amended complaint in accordance with this Order and with Federal Rule of Civil Procedure 11, on or before December 1, 2026. Failure to file an amended complaint by that deadline will result in dismissal of this lawsuit.

Date: November 5, 2026

United States District Judge
Franklin U. Valderrama